IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

  v.                                    Case No. CR-2-10-332
                                          JUDGE GREGORY FROST

WILLIAM H. CONNER,

    Defendant.

## OPINION AND ORDER

This matter came on for consideration upon the Defendant's Motion to Suppress Evidence (ECF No. 47) filed on May 16, 2011, upon the Government's Response (ECF No. 50) filed on May 27, 2011, and upon Defendant's Reply (ECF No. 56) filed on June 7, 2011.  The previously assigned judge, Judge James L. Graham, conducted a hearing on June 8, 2011 at which two witnesses testified on behalf of the Government and Defendant elected to present no witnesses.  Thereafter, Judge Graham recused himself from the case and the matter was assigned to this Court on June 10, 2011.  A status conference was held on June 28, 2011.  Counsel for Defendant, Defendant, and counsel for the Government appeared at the status conference.  The Court inquired whether either party desired to have another hearing on the Motion to Suppress and the parties agreed to submit the issues to the Court on the transcript of the June 8, 2011 hearing.  The Court permitted additional briefing and Defendant filed a Supplemental Memorandum (ECF No. 72) on July 8, 2011.  The Government did not file an additional memorandum.

The Court has reviewed the transcript of the hearing and the memoranda submitted.  Based upon the foregoing, the Court finds Defendant's Motion to Suppress Evidence to be not well taken

and the Court **DENIES** the same.

I.      FACTS

The facts as set forth in the Government's Response to the Motion to Suppress are confirmed by the testimony of the two witnesses, Corporal Dan Johnson of the Franklin County Sheriff's Office who was the Operations Commander for the Internet Crimes Against Children Task Force and Detective Marcus Penwell of the Franklin County Sheriff's Office Special Investigations Unit. The Court finds the facts in this matter to be as follows:

On November 5, 2010, Detective Marcus Penwell applied for and obtained a state search warrant from Judge Amy Salerno of the Franklin County Municipal Court for 772 Martha Lane in Whitehall, Ohio (the "First Search Warrant").  The affidavit in support of the First Search Warrant set forth that on September 10, September 12, and October 24, 2010, Det. Penwell, while using a peer-to-peer file sharing program, had established a direct connection with a computer that was assigned the internet protocol address which related back to 772 Martha Lane and had downloaded multiple images of child pornography from that IP address on each occasion.

Det. Penwell and other law enforcement officers executed the First Search Warrant at 772 Martha Lane on the morning of November 5, 2010.  Upon execution, a Ms. Bobby Lawell, the responsible party for the address, answered the door and was informed of the search warrant for the residence.  At that time, Ms. Lawell stated that her uncle, the defendant William Connor, resided in the garage that was attached to the residence by a second floor walkway, and explained that while the garage was not a separate mailing or billing address, Mr. Connor did pay her $200.00 a month for rent.  Upon hearing this information, investigators were concerned that Mr. Connor and possibly other person might be present in the garage and could potentially gain access to a weapon.  The investigators thus sought to sweep and secure the garage.

Ms. Lawell then led investigators to the door to the garage and investigators made contact there with Mr. Conner.  Investigators asked Mr. Conner for permission to check the garage and ensure that there were no other individuals present.  Mr. Conner agreed and granted the investigators permission to sweep and clear the garage.  Investigators then entered the garage and upon walking through the two-level garage, noticed, in plain-view, a desktop computer plugged into a power strip.  The investigators briefly looked around the rest of the garage and having determined their were no additional individuals present, they exited and secured the garage.

After the protective sweep of the garage, investigators questioned Ms. Lawell about the garage and she stated that only Mr. Conner resided in the garage, and that she believed that the computer that investigators saw in the garage belonged to Mr. Conner.  On the basis of this information - that someone had previously downloaded child pornography from the IP address associated with 772 Martha Lane and that there was another computer present in the attached garage - Det. Penwell applied for and obtained a second state search from Judge David Tyack of the Franklin County Municipal Court to search the attached garage for evidence of child pornography (the "Second Search Warrant"), while other investigators remained at the residence.

Investigators executed the Second Search Warrant on the garage later the same day and found several compact disks located in a desk that the plugged-in desktop computer was sitting on top of, along with several pieces of opened mail displaying the name William Conner.  Investigators seized the computer and all of the compact disks they located.  A preliminary forensic examination of the compact disks was conducted and numerous disks were found to contain hundreds of child pornography videos and images.  Additionally, one of the disks, along with containing child pornography, contained several text documents, including an application for unemployment benefits listing the name William Conner.

Shortly after finding the disks containing child pornography, investigators learned that there had been previous allegations that Mr. Conner had sexually molested his now adult daughter, referred to herein as Victim #1, and that Victim #1 resided in the Lorain, Ohio area. Investigators were able to contact and interview Victim #1 on November 11, 2010. At that time, Victim #1, now 18 years old, detailed that during the approximate time frame when she was between 5 and 9 years old, Mr. Conner had repeatedly molested her and that on at least one occasion during that time frame Mr. Conner had filmed an incident where he had made her pose nude and with her legs spread. Victim #1 described that the incident had been filmed by Mr. Conner with a VHS-style video recorder.

Armed with this new information, investigators then contacted Ms. Bobby Lawell who confirmed that she was aware that Mr. Conner had a very old VHS-style video recorder present with his belongings inside the garage at 772 Martha Lane. Based on these additional facts and the fact that investigators had observed a plastic tub containing numerous VHS tapes inside the garage during the execution of the Second Search Warrant, investigators applied for and obtained an additional search warrant (the "Third Search Warrant") from Magistrate Judge Elisabeth A. Preston-Deavers of the U.S. District Court of the Southern District of Ohio on November 16, 2010. The Third Search Warrant was subsequently executed and investigators located and seized a VHS tape created in 1998 in which Mr. Conner had made Victim #1 pose nude and with her legs spread and video-taped the incident.

## II. ANALYSIS

### A. First Search Warrant

Defendant argues that Detective Penwell's initial downloading of child pornography from Defendant's computer using the peer-to-peer program constituted a warrantless search and violated

4

Defendant's Fourth Amendment rights.  Defendant's position is not correct.

Each court that has considered this issue has held that an individual does not have a reasonable expectation of privacy in data files that are shared with the public through peer-to-peer software.  *See*, *United States v. Stults*, 575 F.3d 834, 841-43 (8th Cir. 2009); *United States v. Ganoe*, 538 F.3d 1117, 1127-28 (9th Cir. 2008); and *United States v. Borowy*, 595 F.3d. 1045 (9th Cir. 2010).  Assuming that Defendant had a subjective expectation in privacy in the information, that subjective expectation is one that society and the law is not prepared to recognize.  A person has no legitimate expectation in privacy in information he voluntarily turns over to third parties.

Further, once an investigator locates prohibited data using a peer-to-peer program, the internet subscriber information which is available to the investigator is not protected by the Fourth Amendment.  Detective Penwell subpoenaed from the internet provider the address of the subscriber using the IP address.  Such investigative techniques have also been recognized by courts to be valid.  There is no legitimate expectation of privacy in noncontent customer information provided to an internet service provider by one of its customers.  *See*, *United States v. Perrine*, 518 F.3d 1196, 1204 (10th Cir. 2008); *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001); and *United States v. Hambrick*, 225 F.3d 656 (4th Cir. 2000).

Defendant further argues that the affidavit for the search warrant lacked the necessary specificity.  This Court disagrees.  The affidavit contained a concise statement of the law enforcement officers background and ability to search for child pornography, what it was that the law enforcement officer found as a result of his investigation, and where the alleged unlawful activity was occurring.  Defendant makes vague assertions that Detective Penwell's statements were false or made with reckless disregard for the truth.  A review of the affidavit does not bear out what Defendant is alleging.  Although Defendant failed to make a preliminary showing that the

5

statements in the affidavit were false or made with reckless disregard for the truth as required by *Franks v. Delaware*, 438 U.S. 154 (1978), Judge Graham provided Defendant with a hearing which did nothing but further bolster the Detective Penwell's assertions and truthfulness.

**B.     Second Search Warrant**

The Government maintains that the Court need not reach the issues raised by Defendant regarding the Second Search Warrant because, according to the Government, the First Search Warrant permitted the search of auxiliary and outbuildings within the curtilage of 772 Martha Lane. This Court is not convinced.

Normally, a search warrant for a residence would impliedly authorize the search of other structures and auxiliary buildings at the named address but the facts of this case are distinguishable from the normal case. Defendant resided in and paid rent for the garage area attached to the 772 Martha Lane residence. Defendant's premises were maintained separately and separated by a door to those premises. Under the circumstances of this case, the Court finds that *United States v. Paull*, 551 F.3d 519 (6th Cir. 2009) upon which the Government relies is not helpful in this case.

Despite that finding, this Court finds that the Second Search Warrant was lawfully obtained. After learning that someone else occupied the garage area, the officers met Defendant at the door to the garage and asked Defendant for consent to check the garage for other persons. Defendant gave consent. While clearing the garage area, the officers observed in plain view a computer that was plugged into an outlet inside the garage. Rather then seizing the computer at that time, the officers noted the presence of the computer and included the details of what they observed in an affidavit for the Second Search Warrant. The Second Search Warrant was issued by Judge David Tyack and, thereafter, a search of the garage area ensued during which the officers seized the computer and several compact disks.

The entry into the garage was proper under two separate theories.  First, Defendant consented which was unrebutted at the hearing and, second, the officers are permitted to perform a protective sweep of the entire premises including the garage to ensure that there were no additional individuals present who would provide a threat to the officers.

The Fourth Amendment permits a search without a warrant if valid consent to search is given.  *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010); *United States v. Morgan*, 435 F.3d 660, 663 (6th Cir. 2006).  Of course, the Government bears the burden of proving by a preponderance of the evidence that the consent was voluntary and not the product of coercion.  This Court finds from the unrebutted facts that Defendant voluntarily consented to the officers entering the garage to satisfy themselves that no one else was in the garage.  The testimony reveals that the officers did not use coercive means to gain entry and the consent was given in a voluntary and unequivocal manner.

Moreover, even if consent had not been given, the officers were nonetheless entitled to enter the garage to perform a protective sweep.  Officers armed with a search warrant may perform a protective sweep of the entire premises and auxiliary areas for their own protection.  *Bills v. Aseltine*, 958 F2d 697 (6th Cir. 1992).

**C.     Third Search Warrant**

After searching the premises and seizing Defendant's computer and several compact disks, the investigators questioned Defendant's daughter.  At the time the daughter was questioned she was eighteen years old.  She related to the officers that when she was between five and nine years old she had been molested by Defendant and on at least one occasion Defendant filmed the incident.  The daughter described in detail the filmed events.  The investigators then spoke with Ms. Lawell, the resident of 772 Martha Lane and the person who rented the garage space to Defendant.  Ms.

Lawell confirmed that Defendant possessed an old-style VHS recorder that had been described by the daughter. The Third Search Warrant was obtained based upon this information and the fact that the officers had observed numerous VHS tapes when they were searching the garage Magistrate Judge Preston-Deavers issued this search warrant. The VHS video tape described by the daughter was located in the garage.

The search warrant was valid and supported by an affidavit that contained sufficient probable cause for the warrant's issuance. The information contained in the affidavit was lawfully obtained after the execution of the first two warrants and as a result of additional interviews with an alleged victim. Defendant raises no specific argument concerning the Third Search Warrant and this Court can find no problems with its issuance.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Evidence (ECF No. 47) is overruled and the same is hereby **DENIED**. Evidence obtained as a result of the execution of the three search warrants may be utilized at the trial in this matter.

**IT IS SO ORDERED.**

                         **/s/ Gregory L. Frost**
                         **GREGORY L. FROST**
                         **United States District Judge**