IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

  v.                                       Case No. CR-2-10-332
                                             JUDGE GREGORY FROST

WILLIAM H. CONNER,

    Defendant.

**OPINION AND ORDER**

       This matter came on for consideration upon the Defendant's Motion to Suppress Statements (ECF No. 48) filed on May 16, 2011, upon the Government's Response (ECF No. 51) filed on May 31, 2011, and upon Defendant's Supplemental Memorandum (ECF No. 72) filed on July 8, 2011. Judge James L. Graham conducted a hearing on Defendant's motion on June 8, 2011. After the hearing, Judge Graham recused himself from the case and the matter was assigned to this Court. A status conference was held on June 28, 2011 and the parties agreed to submit the matter to this Court on the briefing and the hearing transcript.

       After a full review of the briefing and the transcript, the Court finds that Defendant's Motion to Suppress Statements is not well taken and the Court **DENIES** the same.

**I.**    **FACTS**

       The briefs of both parties set forth in detail the facts of the matter and the transcript of the proceedings confirm those facts. The Court finds the facts to be as follows:

       On November 5, 2010, investigators with the Franklin County Internet Crimes Against Children Task Force were executing a state search warrant issued by Judge Amy Salerno of the

Franklin County Municipal Court for 772 Martha Lane in Whitehall, Ohio.  Upon execution, investigators eventually went to the second floor door of the garage and made contact there with Mr. Conner.  Mr. Conner exited the garage and stepped into the second floor bedroom of the residence and spoke in a conversational tone with Det. Penwell and Cpl. Dan Johnson.  Det. Penwell and Cpl Johnson asked Mr. Conner whether there was anyone else present in the garage or whether there were any weapons present in the garage.  Mr. Conner indicated that there were no weapons and Det. Penwell asked him for consent to enter, sweep, and clear the garage.  Mr. Conner agreed and consented to investigators entering and clearing the garage for any additional persons.  At no time prior to seeking Mr. Conner's consent was any physical force used against him by any of the officers present at the scene.  No investigators used loud voice commands against Mr. Conner, or brandished their weapons toward him.  Mr. Conner was never told he was under arrest, nor was he surrounded by other investigators or told that he had to answer the investigator's questions.

After the protective sweep of the garage, investigators asked Mr. Conner to accompany them back into a bedroom within the main residence.  Once there, Mr. Conner was questioned by Cpl. Johnson and not only answered Cpl. Johnson's questions, but in turn asked Cpl. Johnson numerous questions.  At no time prior to or during the questioning did Cpl. Johnson threaten Mr. Conner, tell him he was under arrest, use physical force against Mr. Conner or brandish his weapon.  At no time prior to or during the questioning did Cpl. Johnson tell Mr. Conner that he was not free to leave or that Mr. Conner was required to answer his questions.  During the questioning of Mr. Conner, both he and Cpl. Johnson spoke in a conversational tone.  During the first approximately 15 minutes of the interview, Mr. Conner twice acknowledged that he had given the investigators consent to enter the garage, acknowledged that he had used the computer in the garage and that the computer was presently running.

Eventually, Ofc. John Priest joined in on the interview of Mr. Conner and began pressing Mr. Conner to be honest when Mr. Conner began giving seemingly inconsistent answers about his use of the computer. Mr. Conner began asking if he was going to be arrested and both Cpl. Johnson and Ofc. Priest assured him that he was not under arrest and was not going to be arrested. Mr. Conner continued to be interviewed by Cpl. Johnson and Ofc. Priest for an additional approximately fifty minutes, denying any knowledge about the computer or about anything that may be found on the computer and denying that he had downloaded the child pornography investigators found on the computer disks. Mr. Conner was eventually placed under arrest once investigators confirmed that there was an abundance of child pornography on the computer disks found in the garage. At no time was Defendant read his *Miranda* rights before being formally arrested and taken into custody.

Defendant correctly points out that the officers believed that someone in the house had engaged in illegal child pornography downloads and that once the person had been identified, the plan was to arrest the alleged offender. The officers did inform Defendant that he would not be arrested although they had the intention of arresting whoever they found to have received and possessed child pornography. Defendant did make a statement to Corporal Johnson that Defendant was going to jail for the CD's that were being removed from the garage and Corporal Johnson thought that the comment suggested that Defendant was the offender. Defendant further argues that despite the testimony that Defendant was free to leave, when the officers learned that Defendant had a court appearance that day, Corporal Johnson contacted the court to inform the court that Defendant would not be at court that day while the investigation was ongoing.

## II.   ANALYSIS

Defendant was not formally arrested when the officers spoke with him.. The issue becomes, therefore, whether under the totality of the circumstances of this *Terry*-style investigative detention

3

were *Miranda* warnings required.  To decide this issue, the Court is directed to consider several factors including:

> (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police ...[or] acquiesced to their requests to answer some questions.

*United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998).

In a *Terry*-type investigation, the Government concedes that a reasonable person in Defendant's position may not have felt free to leave.  The Government explains that the additional factors as set forth above provides the totality of the circumstances and strongly supports the view that Defendant was not in custody to the degree associated with a formal arrest.  This Court agrees.

The purpose of the questioning is obvious.  Defendant was being questioned to determine if he was the person who had access to a computer that stored child pornography.  Defendant argues that by the time Defendant began discussing these matter with the officers all other possibilities had been eliminated and Defendant had to be the officers only suspect.  The Court cannot agree with that analysis.  It was imperative that the officers learn who had access to the computer in the garage and what knowledge Defendant had of other users.  The questions asked by the officers were necessary to eliminate other potential suspects.  These are the types of questions that normally surround an investigation.

The place of the questioning was neither hostile or coercive.  Defendant was questioned in the residence where he and the other members of the household lived.  Defendant permitted to move from room-to-room and on at least one occasion was permitted to get coffee when he requested it although an officer did accompany him.  The questioning was always conducted in a conversational

4

tone and lasted for only a little more than one hour.  Defendant was assured on multiple occasions that he was not under arrest and Defendant was not restrained.  Defendant was never threatened and no guns were ever pointed at him.

Given the totality of those circumstances, the Court finds that *Miranda* warnings were not required and the statements made to the officers during the period of time before Defendant was formally arrested are not suppressed.  *See*, *United States v. Hinojosa*, 606 F.3d 875 (6th Cir. 2010); *United States v. Mahan*, 190 F.3d 416 (6th Cir. 1999); *United States v. Salvo*, 133 F.3d 943 (6th Cir. 1998); and *United States v. Warner*, 971 F.2d 1189 (6th Cir. 1992).

### III.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Statements is overruled and the same is hereby **DENIED**.  The Government will be permitted to utilize Defendant's pre-arrest statements at the trial in this matter.

**IT IS SO ORDERED.**

 /s/ Gregory L. Frost
**GREGORY L. FROST**
**United States District Judge**