IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WILLIAM H. CONNOR,

   Petitioner,

   v.

UNITED STATES OF AMERICA,

   Respondent.

CIVIL NO. 2:14-CV-00626
CRIM. NO. 2:10-CR-332
JUDGE GREGORY L. FROST
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

On July 20, 2015, the Magistrate Judge issued an *Order and Report and Recommendation* denying Petitioner's request for an evidentiary hearing and the appointment of counsel. She recommended dismissal of the instant Motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. Petitioner has filed an *Objection* to the Magistrate Judge's *Order and Report and Recommendation*. (ECF No. 152.) Pursuant to 28 U.S.C. § 636(b), this Court has conducted a *de novo* review. For the reasons that follow, the Magistrate Judge's *Order and Report and Recommendation* is **ADOPTED** and **AFFIRMED.** Petitioner's Motion to vacate his sentence under § 2255 is **DENIED**.

Petitioner's request for an evidentiary hearing and the appointment of counsel are **DENIED.**

### I.

Petitioner objects to all of the Magistrate Judge's recommendations and raises the same arguments he previously asserted before her. Petitioner contends that the Magistrate Judge overlooked or omitted key facts and misapplied the law. Petitioner maintains that he lacked legal representation at the time he agreed to wear restraints during trial. Petitioner asserts the Court

unconstitutionally and without justification required him to wear restraints during trial and constrained him to wear jail garb in lieu of street clothes. O*bjection* (ECF No. 152, at Page ID # 1644.) The record fails to support Petitioner's claims or objections.

## II.

"The Supreme Court has long held that the use of visible restraints on a criminal defendant during a trial, absent special need, violates the defendant's constitutional rights." *Fitzpatrick v. Bradshaw*, No. 1:06-cv-356, 2009 WL 3734143, at *25 (S.D. Ohio Nov. 5, 2009) (citing *Deck v. Missouri*, 544 U.S. 622, 626 (2005); *Holbrook v. Flynn,* 475 U.S. 560, 568–69 (1986); *Illinois v. Allen*, 397 U.S. 337, 343–44 (1970)). "The concern is that a defendant may suffer prejudice if forced to appear in shackles in that it compromises the physical semblance of innocence, may undermine the defendant's ability to participate in his own defense and to confer with his legal counsel, and may impair the 'dignity and decorum of the judicial process.' " *Id*. (quoting *Kennedy v. Cardwell*, 487 F.2d 101, 105–06 (6th Cir. 1973)). "[W]here a court, without justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation. The [government] must prove 'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.'" *Deck*, 544 U.S. 635 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). Shackling a defendant at trial without an individualized determination as to its necessity violates due process. *See Lakin v. Stine*, 431 F.3d 959, 966 (6th Cir. 2005) (holding that defendant's due process rights were violated because the court did not engage in a case-specific inquiry regarding the necessity of shackles). In making decisions regarding the use of restraints, the Sixth Circuit has held that a court should consider the defendant's record, temperament, and the desperateness of his situation; the state of the

courtroom and courthouse; the defendant's physical condition; and whether there is a less prejudicial but adequate means of providing security. *Lakin*, 431 F.3d at 964 (citing *Kennedy*, 487 F.2d at 110-11); *see also Evans v. Voorhies*, No. 1:06cv746, 2007 WL 2891003, at *24 (S.D. Ohio Sept. 28, 2007) (same).

Based on similar concerns, the Supreme Court likewise has recognized that "due process precludes a defendant from being compelled to stand trial in jail or prison garb as long as the defendant has made a timely objection." *Pratt v. Davis*, No. 07-CV-15112, 2009 WL 2766725, at *8 (E.D. Mich. Aug. 26, 2009) (citing *Estelle v. Williams*, 425 U.S. 501, 510 (1976)). As the Supreme Court has noted:

> [A]lthough the [Court] cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation.

*Estelle v. Williams*, 425 U.S. at 512-13. No constitutional violation occurs, however, where the defendant chooses to be tried in jail attire. *Id.* at 507-08. "The reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. . . . [I]t is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Id*. at 508 (citations omitted.)

### III.

On August 18, 2011, the Court granted Petitioner's request for self-representation. On August 25, 2011, at the final pre-trial conference, the Court advised Petitioner of an August 24, 2011 memorandum submitted from the Marshals Service regarding courtroom security. *Transcript* (ECF No. 141, at Page ID# 1441-42.) The Court provided Petitioner with a copy of

3

the memorandum.  (*Id.* at Page ID # 1442.)  The memorandum indicates in relevant part that the Marshals Service recommended that it place an electronic restraint device on Petitioner throughout the duration of the trial:

> The USMS believes that the implementation of this device is in the best interest of all parties involved and will improve the security of the trial while permitting the defendant freedom of movement and providing for a fair trial.  The USMS believes that the device is necessary for the following reasons[:] The defendant will be un-restrained whenever in the presence of the jury; the defense table, at which the defendant will be seated is in very close proximity to the witness stand; the anticipated presence of juvenile and adult victims and victims' family members who may serve as witnesses against the defendant.  The USMS can foresee instances in which inflammatory testimony may be given which could possibly provoke the defendant.  Implementation of the electronic restraint device may deter the defendant from outbursts in such instances and will stop the defendant, upon deployment, from acting physically aggressive if he chooses to do so.  Additionally, the deputy in charge of this trial has been advised by investigators in this case that multiple family members of both the defendant and of victims are expected to attend the trial as spectators.  It was noted throughout the investigation that the aforementioned families have a long history of contempt towards one another and may intentionally or unintentionally disrupt or provoke the defendant.
>
> . . .
>
> The electronic restraint device will be placed underneath the defendant's clothing and will not be visible to jurors or witnesses nor will the device hinder the defendant's ability [to] defend himself and move throughout the court room if necessary.

(ECF No. 89-1, at Page ID# 517.)  The Court explained to Petitioner that the Marshals Service intended to use the electronic restraint device that would be placed around Petitioner's belt area underneath his clothes and not visible to the jury.  (ECF No. 141, at Page ID # 1443.)  If it appeared that Petitioner was "getting out of hand," the stun belt would be activated and produce a shock.  The Court also explained that "the shock would put you down; put you on the floor

basically." (*Id.* at Page ID # 1443-44.)  Petitioner said he understood.  The Court advised Petitioner that with use of the stun belt, he would no longer be required to wear handcuffs or shackles during trial.  "Otherwise, we have to keep the handcuffs and shackles on." (*Id.* at Page ID # 1444.)  Petitioner said that it "didn't matter" to him. (*Id.*)  The prosecution agreed with the recommendation of the Marshals Service:

> I had a chance to review the memorandum.  The United States' position is that – I think the reasons for wearing the electronic restraining device are well set forth.  I think it's necessary, particularly given during the course of this investigation it became very evident that there is a very contentious relationship between Mr. Conner's family and the family of the victim that we expect to testify in this trial.
>
> So, for those reasons – I think the Marshal's reasons are set forth very clearly – I think they're very valid, and the United States would join them in suggesting that the defendant be required to wear an electronic restraining device.

(*Id.* at Page ID # 1444-45.)  The Court then inquired whether Petitioner had any additional response:

> [PETITIONER]:  I don't see why, I mean, you know, they're thinking this.  Is there a reason they're thinking this on behalf of the prosecutor?
>
> THE COURT:  Well, they're worried that – they're worried that something might happen.

(*Id.* at Page ID # 1445.)  Petitioner stated that he was "fine" with use of handcuffs and said, "It don't matter to me one way or the other.  I'm comfortable in these one way or the other.  I can wear these." (*Id.* at Page ID # 1450.)  The Court advised Petitioner against it, telling him that "[w]hen you appear in court in jail clothes and in physical restraints that are visible, it might give the wrong impression to the jury . . . because, again, as I said, you're innocent until proven guilty.  So, that's why we are trying – we are taking these steps . . . to allow you some freedom

5

in the courtroom but to ensure us that everything can remain safe." (*Id.* at Page ID # 1450-51.) Petitioner nonetheless rejected use of the stun belt. (*Id.* at Page ID # 1451.) Petitioner stated, "I reject on it, and I don't want to wear it." (*Id.*; *see also* Page ID# 1452.) Petitioner indicated that he preferred to be handcuffed and shackled during the trial because "[i]t's just the way I feel." *Id*. He also stated, "I ain't going to argue, fight, or nothing." (*Id.* at Page ID # 1452.)

After the final pretrial conference, the Court memorialized its discussion with Petitioner concerning the use of electronic restraint device in a formal Order and explained:

> This Court recognizes that the use of a stun belt or shackles and handcuffs during a jury trial implicate a defendant's right to due process. The use of such security measures must be subjected to close scrutiny. *United States v. Miller*, 531 F.3d 340 (6th Cir. 2008). This Court is mindful of the fact that physical restrain[t]s should be used as rarely as possible. [The Marshals Service] letter raises the real possibility of violence in the courtroom given the nature of the case, the witnesses who will be involved, and the potentially inflammatory testimony.
>
> Based upon the letter received from the United States Marshal's office and the arguments made by the Government at the hearing, this Court is convinced that security measures are necessary to prevent disruptions, intimidation, and violence.
>
> The Court then explained to Defendant that an electronic restraint device would be less obtrusive and the jury would not be aware that Defendant was wearing it. The Court recommended to Defendant that the stun belt is a better option [than] handcuffs and shackles which would be visible to the jury. Despite the warnings and recommendations to Defendant, Defendant chose to wear shackles and handcuffs during the trial.

(ECF No. 89, at Page ID # 515-16.)

On the first day of trial, Petitioner appeared dressed in handcuffs and shackles and wearing his jail garb. (ECF No. 127, at Page ID # 924, 927.) He indicated that he had clothing at the Franklin County Jail. (*Id.* at Page ID # 925.) The Court took a recess in order for Petitioner to obtain his clothing. (*Id.* at Page ID # 926.) Petitioner again refused use of the stun

belt, indicating that he had a heart problem and stating, "I got. . . some of my heart left, because the other part of it died, and I didn't want to be shocked accidentally or whatever and end up dying. That's the only reason why I rejected it." (*Id.*)

Petitioner affirmed that he chose to proceed to trial wearing shackles. (*Id.* at Page ID # 927-28.) Petitioner also appeared in jail clothes on the first day of trial. (*Id.* at Page ID # 924.) He indicated that he preferred to wear street clothes, which remained at the Franklin County Jail. (*Id.* at Page ID # 924-27.) The Court therefore took a recess to enable Petitioner to obtain any clothes that had been delivered for him. (*Id.*)

Contrary to Petitioner's allegation here, the record establishes that the Court made an individualized inquiry as to the necessity of restraining Petitioner during the trial. Moreover, Petitioner competently exercised his right to self-representation at the time he refused use of an electronic restraint device in favor of shackles. The Court advised Petitioner numerous times, including at the August 25, 2011 final pre-trial conference, against appearing before the jury in jail clothing and informed Petitioner that he needed to arrange to have clothing available prior to Monday, August 29, 2011, the first day of trial. *Transcript* (ECF No. 141, at Page ID # 1441.) After a recess was taken so that Petitioner could obtain any clothing he had had delivered for trial, Petitioner never thereafter objected or raised the issue. Failure to make an objection negates the presence of compulsion necessary to establish a constitutional violation. *Estelle*, 425 U.S. at 512-13; *see also United States v. Garcia*, 259 F. App'x 747, 753 (6th Cir. 2008). It is well settled that "[b]eing tried in a jail uniform is not inherently prejudicial" and that "a defendant may not sleep on his rights and then cry foul when that appears to be to his advantage." *Moore v. Rose*, 356 F. Supp. 146, 148 (E.D. Tenn. 1972) (citations omitted). Further, the record supports the justification of implementing security measures and indicates

7

that Petitioner chose to wear restraints in lieu of the stun belt.  Petitioner's objections in this regard are **OVERRULED**.

For the reasons already well detailed in the Magistrate Judge's *Order and Report and Recommendation,* Petitioner's remaining objections likewise are **OVERRULED.**  Petitioner's claims that defense counsel failed to raise a potentially meritorious argument in the filing of the motion to suppress evidence and that the charges against him were multiplicitous are meritless.

## IV.

The Magistrate Judge's *Order and Report and Recommendation* is **ADOPTED** and **AFFIRMED.**  Petitioner's Motion to Vacate Sentence is **DENIED**.

Petitioner's request for an evidentiary hearing and the appointment of counsel are **DENIED.**

**IT IS SO ORDERED.**

    /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE